

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH A. LOSANO,<br>　　　　　　Plaintiff<br><br>　　v.<br><br>Former Boston Police Commissioner WILLIAM EVANS,<br>Commander of Boston Police Sexual Assault Unit GEORGE<br>JULIANO, Boston Police Detective JESSE GOFF, Boston<br>Police Detective MARY ROONEY, Boston Police Detective<br>BRENDAN KELLY, Boston Police Patrolman RYAN<br>WYNNE, Boston Police Patrolman ROBERT MACLEAN and<br>the CITY of BOSTON.<br>　　　　　　Defendants | C.A No. _____<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

1. This is an action for money damages for violations of the Plaintiff's constitutional rights brought pursuant to 42 U.S.C. SS 1983. Plaintiff, Joseph A. Losano, alleges that the Defendant Boston police violated his 5th and 14th Amendments rights of Due Process of the United States Constitution /Article XII of the Massachusetts Declaration of Rights. Plaintiff also brings claims pursuant to the Massachusetts Civil Rights statute, M.G.L. CH. 12, Sub.Sec.11-I and Massachusetts Common Law claims for Malicious Prosecution and Abuse of Power. Also under 42 U.S.C. SS 1983, Defendant Boston police violated 4th Amendment right to be free from Unreasonable Search and Seizure of the United States Constitution,

## JURISDICTION

2. Jurisdiction is based upon 28 U.S.C.SS1331, and on the pendent jurisdiction of this court to entertain related claims arising under state law.

## PARTIES

3. Plaintiff JOSEPH A. LOSANO (hereinafter Losano), 128 Burrill St. Apt. B, Swampscott, in the County of Essex, Massachusetts 01907. Cell 781) 731-2272. Email" jlusa321@gmail.com."

4. Defendant WILLIAM EVANS (hereinafter EVANS) is the former police Commissioner of the Boston Police Department; currently the Chief of Police for Boston College, who was acting under the color of law at all times relative to this Complaint, and is sued in his former individual capacity. All Defendants information is on attached sheet.

5. Defendant GEORGE JULIANO (hereinafter Juliano) is the Commander of the Boston Police Department's Sexual Assault Unit, who was acting under the color of law at all times relative to this Complaint, and is sued in his individual capacity

6. Defendant JESSE GOFF (hereinafter Goff), currently a detective in the Boston Police Department's Sexual Assault Unit, who was acting under the color of law at all times relative to this Complaint, and is sued in his individual capacity.

7. Defendant MARY ROONEY (hereinafter Rooney), currently a detective in the Boston Police Department's Sexual Assault Unit, who was acting under the color of law at all times relative to this Complaint, and is sued in her individual capacity.

8. Defendant BRENDAN KELLY (hereinafter Kelly), currently a detective in the Boston Police Department's Sexual Assault Unit, who was acting under the color of law at all times relative to this Complaint, and is sued in his individual capacity.

9. Defendant RYAN WYNNE (hereinafter Wynne), currently a patrolman in the Boston Police Department, who was acting under the color of law at all times relative to this Complaint, and is sued in his individual capacity.

10. Defendant ROBERT MACLEAN (hereinafter MacLean), currently a patrolman in the Boston Police Department, who is a senior officer to Wynne, who was acting under the color of law at all times relative to this Complaint, and is sued in his individual capacity.

11. Defendant CITY OF BOSTON.

## NON-DEFENDANTS

12. Bryan Cousin (hereinafter Cousin), is the second named alleged rape suspect and owner of the white in color, 2012 Chevy Silverado pickup truck.

13. Alleged victim, MD. Initials are in lieu of names to comply with Massachusetts General Law c.41:s.97D and c.265:s24C.

14. Alleged victim, TS. Initials are in lieu of names to comply with Massachusetts General Law c.41:s.97D and c.265:s24C.

15. Alleged victim, KL. Initials are in lieu of names to comply with Massachusetts General Law c.41:s.97D and c.265:s24C.

16. Alleged victim, KS. Initials are in lieu of names to comply with Massachusetts General Law c.41:s.97D and c.265:s24C.

17. Alleged victim, KT. Initials are in lieu of names to comply with Massachusetts General Law c.41:s.97D and c.265:s24C.

18. Tanya Viele (hereinafter Viele), Boston police witness to 94 George St. arson/murder case.

19. Bryan Owens (hereinafter Owens), AKA *Killer*, gang leader of the TRIPLE" D" BOYS, Mass Ave./Melena Cass Blvd. area

20. Marcus Dozier (hereinafter Dozier), gang member of TRIPLE"D"BOYS. Indicted for arson/murder, summer of 2017.  Acquitted summer of 2018.

21. Kenneth Ford (hereinafter Ford), gang member of TRIPLE"D"BOYS.  Indicted for arson/murder, summer of 2017. Acquitted summer of 2018.

## PLAINTIFF'S PERSONAL HISTORY

22. Losano is Native American born in Boston, Massachusetts, June of 1966.

23. Losano was placed in state foster care at 6 months and adopted (1968) into the Losano family of Swampscott, Massachusetts.

24. Participated in the Swampscott school system starting at the kindergarten to the 12th grade, where Losano graduated in 1985.

25. Losano continues to be a lifelong resident of Swampscott, Massachusetts.

## EDUCATION

26. Swampscott High School, Class of 1985, General Studies. Exhibit 1.

27. North Shore Community College, 2001, Associate Degree in Criminal Justice. Exhibit 2.

28. Air Force University, 2006, Airman Leadership School. Exhibit 3.

29. Salem State University, 2016, Bachelor of Science in Criminal Justice. Exhibit 4.

## MILITARY WORK HISTORY

30. United States Marine Corps-Active Duty. Enlisted. 1985-1989, Honorable Discharge. Exhibit 5.

31. USMC-Military Occupation Specialty (hereinafter MOS) and Jobs: Security Forces, Infantry 0311; Special Operations/Helo Assault Unit, Military Police. Exhibits: 6, 7, 8, and 9.



32. United States Army-Federal Reserve. Enlisted, 1990-1993, Honorable Discharge (transferred NG).

33. USA-MOS/Jobs: Infantry 11B/Infantry Scout.

34. Massachusetts Army National Guard. Enlisted, 1993-1996, Honorable Discharge. Exhibit 10.

35. MANG-MOS: Military Police 31B. Exhibit 11 (2 page Exhibit).

36. United States Air Force-Reserve. Enlisted, 1997-2000, Honorable Discharge. Exhibit 12.

37. USAF MOS: Security Police 3P031. Combat Tour-Kuwait 1999. Exhibit 13.

38. Massachusetts Army National Guard. Enlisted, 2002-2003, Honorable Discharge.

39. MANG MOS: Military Police 31B. Combat Tour-Afghanistan 2003. Exhibit 14.

40. United States Air Force-Reserve, Enlisted, 2004-2010. (Re-enlisted into Navy).

41. USAF MOS: Security Police 3P031. Combat Tour-Iraq 2010. Exhibits 15 and 16.

42. United States Navy-Reserve. Enlisted, 2010-2013, Honorable Discharge. Exhibit 17.

43. USN MOS: Master at Arms B640. Exhibit 18.

44. Retirement in 2013.

45. Losano is a well decorated veteran. See Exhibit 19.

## **CIVILIAN WORK HISTORY**

46. To minimize reading time, only main jobs will be listed.

47. Driftwood Restaurant, Marblehead, Massachusetts. 1979 to 1995. Family owned.

48. Filene's Basement, Danvers, Massachusetts.1990-1992. Loss Prevention.

49. Ann & Hope, Danvers, Massachusetts. 1992-1994. Asst. Security Manager/Special Police Officer. Exhibit 20 (Special police officer verification letter).

50. Filene's, Peabody, Massachusetts. 1995-2000. Loss Prevention. Exhibit 21 (Letter from a former ADA stating that Losano makes sure the right person is prosecuted).

51. Abercrombie & Fitch, Boston, Massachusetts, 2000-2004. Security Director.

52. DV8 Clothing Store, Saugus and Attleboro, Massachusetts, 2004-2010. Part time, Store Detective.



53. Bay Ridge Hospital, Lynn, Massachusetts, 2004-2005. Security Director.

54. Shaw's Supermarket, Salem, Massachusetts, 2008-2010. Loss Prevention.

55. Peabody Essex Museum, Salem, Massachusetts, 2011-2016. SCRO.

56. UBER, 2015-2017.

57. While working as an UBER driver and other pass employments, Losano always assisted helping others who were in distress, due to being a victim of crime. See "COPLINK" for verification.

58. Access, Peabody, Massachusetts, 2017-2018. Lost employment due to being arrested.

59. Handyman (self-employed), Swampscott, Massachusetts. 2018-Present.

60. Part-time/on call substitute teacher in Peabody, Beverly, Saugus then Swampscott. 1999-2017.

## LEGAL BACKGROUND

61. Losano prevailed in a Federal suit against the Town of Swampscott, due to Swampscott police 1st Amendment right violation, Malicious Prosecution and Abuse of Power claims. See CA 02-01111-MEL.

62. Once that trial concluded, 2 separate lawyers/firm warned Losano he would be targeted by law enforcement for my civil action.

63. In regards to this criminal case being dismissed, Losano was warned, once again, by an attorney that he will be targeted by law enforcement, due to the Nolle Prosequi.

## STATEMENT OF FACTS

64. Losano drove for Uber in a black in color, 2002 Jeep Grand Cherokee, from 2015 until mid-June 2017.

65. While working for Uber in the Mass Ave./Melena Cass Blvd area of Boston, Losano became friendly with some of the beggars along the median.

66. During the late fall of 2016, Losano received critical information from street beggar Viele that 2 men set a fatal house fire in Roxbury. See PATCH/Boston article, Exhibit 22 (2 page Exhibit with victim's photo added.)

67. Viele's friend, Michelle Trenton, was killed in the inferno.

68. With consent from Viele, Losano immediately brought this information, via video disc, to the attention of the Boston Police Department (hereinafter BPD).

69. Losano provided his FACEBOOK information and cell number to Viele.

70. On 5/3/2017, Losano testified at a Boston Superior Court Grand Jury in regards to the fatal fire. 1784CR00458 and 1784CR00459. Exhibit 23.

71. During the summer of 2017, Dozier and Ford were indicted for this arson/murder.

72. Unbeknownst to Losano, this indictment crippled Dozier and Ford gang, the Triple"D"Boys.

73. On 7/11/2017, Viele informs Losano that the street, in particular the Triple"D"Boys, were not happy with her, but more with Losano's participation in the arson/murder investigation.

74. After numerous declined offers to relocate Viele to a better location, with services, Losano informs Viele that it would be best if he became "a ghost" and suggested the same to Viele.

75. Prior to departure, Losano gave Viele money for food. Exhibit 24 (Lines 6-7).

76. During same time period, Losano became friendly with MD.

77. Losano has also given food/money to MD. Exhibit 25 (Line 1-2).

78. Losano provided FACEBOOK information to MD.

79. Unbeknownst to Losano, MD is connected to the Triple"D"Boys gang.

80. On 10/20/2017, MD was arrested by the BPD on a warrant.

81. During the booking process, MD claims she was raped by an "*unknown male/who was masked/driving a white pickup truck/ and had a silver firearm.*" Exhibit 26 (5 page Exhibit).

82. Other than a vague age estimate, MD provided no description of suspect during the booking process.

83. MD continued to state she was raped in an alley off of Topeka Street back in June or July 2017. See GOOGLE aerial view of Topeka Street area, Exhibit 27.

84. There are no alleys on Topeka Street.

85. Per BPD protocol, the BPD Sexual Assault Unit (hereinafter SAU) was notified.

86. Goff did a short phone interview with MD. Exhibit 28 (2 page Exhibit).

87. Goff's *post* report on MD phone interview differs significantly from the booking officer's report.

88. Goff claims that MD gave him a plate; according to all discoveries he never ran that plate.

89. During MD's 6/11/2018 interview with Goff, Goff seems puzzled about the plate being reported.

90. Goff claims that MD stated suspect had a second vehicle, a box shaped Jeep, however, booking form indicates no second vehicle.

91. On 10/23/2017, MD was released from custody and never followed up with Goff.

92. Goff never did a follow up investigation with MD until 6/11/2018, even though he claims that he has prior text/cell conversations with MD.

93. Goff, if he hasn't done so, a CORI check would have revealed a conspiracy charge on MD's record.

94. During Losano's 2018/19 criminal discovery process, Goff refuses to provide any text/calls/ face to face contact/notes that involved MD, even though Losano's attorney requested this discovery 3 times.

95. Goff statement of texting/calls to prostitutes in the early mornings was reinforced by Commander Juliano's YOUTUBE video that was posted on/about 2/4/2019.

96. YOUTUBE title: 2019 Thomas J. Norton Detective of the Year. Det. Jesse Goff.

97. In the YOUTUBE video, Juliano states the following "*often [prostitutes] would call him at 2 or 3 in the morning...*" time on video 01.03 to 01.06.  Emphasis and [ ] added.

98. On 10/29/2017, at approximately 1:28 am, MD makes a 911 call from the area of 1010 Mass Ave. stating to dispatch that she had seen the suspect, who had raped her, driving in a white pick up truck.

99. Wynne and Officer Sean Flynn arrive at the scene and MD now claims to be raped on Atkinson Street (not Topeka Street) in September (not June or July of 2017). See Wynne's 911 report, Exhibit 29.

100. MD rape date and location are inconsistent with her 10/20/2017 statements during her booking session.

101. MD provides a different plate from 10/20/2017.

102. Wynne runs this plate on his police terminal and uploads a RMV photo of the owner of the truck, who is ID as Bryan Cousin. Exhibit 30 (Line 2-12).

103. Wynne shows MD the RMV photo Cousin. Exhibit 30 (Lines20-25).

104. Wynne continues to state he also omitted this fact from his report. Exhibit 30 (Line 23-25) and Exhibit 31 (Lines 1-16). Both Exhibits 30 and 31 are from the same BPD transcript.

105. Wynne confirms this action at the 7/23/2019 suppression hearing, however...

106. ...During MD 6/11/2018 station interview with Goff, she denies this event ever happened. Exhibit 32. (Lines 23-24) and Exhibit 33 (Lines 1-4).

107. Wynne maliciously and unwarranted shows MD a RMV photo of the owner of the truck, thus tainted any future photo array of that suspect.

108. A search of the area resulted in negative results for suspect's truck.

109. From 10/12/2017 to 12/16/2017, Losano had a temporary guest staying at his apartment.

110. This guest was prepared to testify that Losano never left in the early mornings, specifically 10/29/2017.

111. According to the discovery paperwork in regards to the search warrant affidavit, the owner of the pickup truck, Bryan Cousin is a suspect in 2 of the rapes. See search warrant page 9, 5th paragraph, Exhibit 34.

112. According to BPD discoveries, Goff never did a follow up on the plate that MD provided during her 10/29/2017 911 call until February 13, 2018; 4 months later. Exhibit 35.

113. According to the entire BPD discoveries no one else from BPD did any other follow up until April of 2018.

114. According to the entire BPD discoveries, other than MD report on 10/20/2017, no other reports came into any of the BPD districts in regards to a white truck assaulting women in the Mass Ave. area.

115. On 4/27/2018, Wynne observed a white pickup truck with a defected tail light on Frontage Road.

116. Wynne claims that he re-calls the plate from 7 months prior.

117. Wynne performs a vehicle stop and Losano was ID as the driver and alone.

118. During the vehicle stop, Wynne asked Losano if he had a firearm.

119. Losano stated yes, and is duly license to carry such, as verified by Wynne.

120. Wynne took possession of the firearm during the stop.

121. Wynne describes Losano's firearm as silver; however, it is clearly black. See BPD discovery photo of Losano's firearm, Exhibit 36.

122. Wynne, knowing that there is no description of the suspect, released Losano after a lengthy stop, and issued a written warning citation.

123. According to all discoveries, there was no report of sexual assaults/rapes on 4/26/2018 or 4/27/2018 in that area involving a white pickup truck.

124. On or about 4/28/2018, Goff was informed of the vehicle stop and that Losano was ID as the driver.

125. On 5/1/2018, Wynne and MacLean maliciously and unwarranted shows KT a RMV photo of Losano. See Exhibit 37 (Line 25), Exhibit 38 (Lines 1-25), and Exhibit 39 (Lines 1-11).

126. This is a clear violation of Losano's "Due Process Rights" and BPD's "Blind Administration Test."

127. MacLean, who is senior officer to Wynne, does not intervene in the malicious/unwarranted actions of Wynne.

128. MacLean never reports to his supervisor(s) the showing of Losano's photo to KT by Wynne.

129. This action was also verified by the Department of Criminal Justice Information Services data sheets (hereinafter DJCIS, Exhibit 40 (14 page Exhibits).

130. Wynne maliciously omits showing KT a photo of Losano from his report.

131. Goff was notified of Wynne's misconduct prior to the 7/11/2018 Grand Jury indictment. See Goff's suppression hearing on 7/23/2018, Exhibit 41 (Lines 3-16).

132. According to all discoveries, even though Rooney is one of the primary detectives investigating this case, not once did she run Losano's information on the DJCIS. Exhibit 40.

133. All DJCIS paperwork relating to Losano, from Rooney, was omitted/deleted from all discoveries. See Exhibit 40.

134. In the early morning of 5/3/2018, Wynne and MacLean are on patrol and perform a street interview with TS.

135. TS claims her rape occurred in November 2017 in Waltham.

136. MacLean unsympathetic to TS tells her "Go to Waltham and report it." Exhibit 42 (Verification of MACLEAN transcript) and Exhibit 43 (Lines 14-17).

137. TS fail to inform the officers that she had been allegedly attacked by Losano in this early morning time frame.

138.. This fabricated attack was stated by KL at her 5/10/2018 interview. Exhibit 44 (Lines 21-23), Exhibit 45 (Lines1-22), and Exhibit 46 (Lines 1-7).

139. A BPD discovery request of Losano's medical records would have revealed that this alleged attack would not be physically possible. See VA medical letter, Exhibit 47.

140. Wynne, who is well aware of the description of the truck and Losano, never logs or reports seeing Losano or the truck in the suspected area on 5/3/2018.

141. According to all BPD discoveries, there were no reports of any sexual assaults in the suspected area on 5/3/2018

142. On 5/4/2018, Kelly inputs maliciously, misleading information to the Massachusetts State Police Fusion Center, where a Bias/Highly Suggestive photo array is created. See BPD photo array, Exhibit 48 (8 page Exhibit).

143. Goff with wanton/malicious recklessness approved this tainted photo array.

144. Goff is well aware that the fillers are at least 15 years younger than Losano.

145. Goff is also well aware that Losano's photo, in the photo array, is the only one looking away from center.

146. Goff is well aware that 7 of the fillers have lighter complexions, while Losano is the only one that has a darker complexion.

147. Goff is also well aware that 3 fillers have facial hair, while the description of the suspect is a clean shaving male (minus KS).

148. KS fails to pick Losano out of the tainted photo array.

149. This photo array was later deemed Bias/Highly Suggestive by Superior Court Judge Susan E. Sullivan from a suppression hearing conducted on 7/23/2019.

150. On 5/4/2018, the BPD sent out a state wide bulletin in regards to this investigation, with negative results. Exhibit 49.

151. On 5/7/2018, Goff, who was alone in his unmarked police vehicle, performs a street interview with KS.

152. KS explains a story of being assaulted, however, describes a suspect which is CLEARLY not Losano.

153. KS 5/7/2018 street transcripts states, in part,
Exhibit 50:
**Line 6** He's got a stomach, He's got a belly. Like a, if I would guess, I would say that he's
**Line 7** about 45. Uh, he's under 50, I would guess he's under 50, he had to be under
**Line 8** 50. Um, but he's over 40. So 45 is, um my best guess. He has like a buzz cut. Uh,
**Line 9** like slowly balding
**Line11** Receding hair line, Uh, he has greenish eyes. He has a mole
**Line 13** He's thin. The mole is on the
**Line 15** It's on the right side of his face. Right here, right here. Right,
**Line 16** like, like his cheek.
**Line 19**...So, he's got a mole or freckle or something there. uh,
**Line 20** *he was kinda, had a scruffy beard...*

154. KS description of the suspect, from Goff's search warrant affidavit is as follows:
Exhibit 51,
**3rd paragraph:** 40-50 years old, with greenish eyes, a mole on his face, a "buzz cut", who was unshaven at the time.

155. KS claims the suspect used the child safety locks to lock the doors and windows, thus preventing her from escaping. Exhibit 52 (Lines1-6).

156. Goff fails to perform a simple GOOGLE search of the model and make of a 2 door Chevy Silverado which would reveal that make/model does not have that option.

157. KS claims the suspect struck her in the face, with the firearm, while in the truck. Exhibit 52 (Lines 9-16).

158. KS claims of being injured and had to go to the hospital. Exhibit 52 (Line 14).

159. Months later BPD impounded the truck and tested it for DNA/Blood evidence; only to come up negative.

160. Goff clearly softens KS description of the suspect to the Grand Jury, thus misleading the Grand Jury in believing its Losano.

161. The second suspect, Cousin, was named in the search warrant's affidavit in connection with KS's description.

162. Even though Goff has the same tainted probable cause to arrest Cousin, he is never arrested.

163. Once Cousin was cleared as a suspect, Losano was indicted for the two women, one being KS.

164. On 5/8/2018, TS was officially interviewed for almost 40 minutes by Goff and Rooney at the South Boston police station.

165. There, TS changes the rape date from November 2017 ( Exhibit 53 search warrant affidavit, 5th paragraph) to March of 2018. Exhibit 54 (Line 16).

166. TS claimed that she was taken from Boston, driven to a Waltham VFW, where she was assaulted at gun point, then driven back to Boston and then paid.

167. TS describe the structure at the Waltham's VFW as follows: *"I remember there was a bench and, and like a, you know, like a thing to sit underneath. Like, where they smoke outside, probably."* Exhibit 55 (Lines 1-2).

168. According to GOOGLE aerial photo of the Waltham VFW and Losano's attorney private detective, there is no such structure at that VFW. Exhibit 56.

169. TS claim that the suspect was wearing a T-shirt, due to it being warm out. Exhibit 57 (Line 10-11).

170. A simple check with "WORLD WEATHER," would have revealed there were absolutely no warm early mornings in March of 2018 to wear such attire. Exhibit 58.

171. According to TS, who would have been in the vehicle for a minimal time of 40 minutes, could not describe any obvious key items or electronics that were present in the interior of the suspected pickup truck nor any obvious description of the firearm.

172. At the end of this interview, TS was asked by Goff when was the last time you had seen the suspect?



173. TS answers on a regular basis, but never states she was almost kidnapped on or about 5/3/2018. Exhibit 59 (Lines 8-13).

174. During this interview, neither Goff nor Rooney noted any injuries to TS neck as observed by KL. See ahead on Complaint Line 190.

175. After this interview, TS participated in a tainted photo array, where she picked out Losano.

176. According to the DSJIC, Losano's RMV records are missing for this day. Exhibit 40, pg. 000008

177. Goff and Rooney never run a "Field Interview and Observation" (hereinafter FIO) report on TS.

178. On 5/10/2018, KL was interviewed by Goff and Rooney at the Washington Street Boston police station.

179.  Goff is well aware that she is high during this and the Grand Jury interviews. Exhibit 60 (Lines 22-25) and Exhibit 61 (Lines 1-7).

180. KL claims that she was taken from Boston, driven to the Quincy VFW, where she was assaulted at gun point, driven back and then paid.

181. KL was very specific in getting paid $16.00. Exhibit 62 (Line 20).

182. KL further claimed that the suspect wanted to pay her $200.00 more and had to go to an ATM and told her to wait at a drop off point. Exhibit 63 (Lines 18-20).

183. According to KL, the suspect did return, where she re-entered the truck and was assaulted again. She was then paid $200 upon exiting the vehicle. BPD transcript, Exhibit 64 (Lines20-21).

184. Goff/Rooney never requested Losano's ATM financial records for the $200.00 withdrawal in the summer of 2017. It would have been exculpatory for Losano.

185. KL could not describe any obvious key items or electronics that were present in the interior of the suspected pickup truck nor any obvious description of the firearm.

186. At the end of this interview, KL stated she saw the suspect ***"the other night,"*** which would have been May 3, 2018. BPD transcripts, Exhibit 65 (Line 21).

187. Goff and Rooney never request to view city cameras to collaborate KL date of 5/3/2018 sighting of suspect's truck.

188. KL states the suspect tried to pull TS into his car. Exhibit 65 (Line23), 66 (Line 1) and Exhibit 67 (Lines 6-7).

189. KL restates that suspect attempted to kidnap TS in a Grand Jury transcript. Exhibit 68 (Lines 15-19).

190. KL adds into her statement that TS had scratches marks on her neck. Exhibit 68 (Line 16).

191. Goff and Rooney, who were present for both in station interviews of TS and KL have clear knowledge that KL was lying about the attempted assault on TS or…

192. …TS, for some unknown reason(s), omitted in telling Goff/Rooney of this alleged incident at her 5/7/2018 street interview and her police station interview on 5/8/2018.

193. The government has probable cause to make an arrest when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information" would lead a prudent person to believe the arrested person had committed or was committing a crime is clearly absent after Goff and Rooney interviews with TS and KL.

194. After this interview, KL participated in a tainted photo array, where she picked out Losano.

195. Goff and Rooney never ran a FIO for KL.

196. The FIO report would have reveal that KL's boyfriend is Owens (AKA *Killer*), who is directly connected to the George Street arson/murder investigation and is the gang leader of the Triple"D"Boys.

197. Goff/Rooney fails to do a simple Facebook search of KL's friends.

198. The Facebook search would have revealed that TS, KL and MD are all friends.

199. Goff, while running TS's CORI on 5/4/2017, revealed that she has a previous *false police report* and a previous *conspiracy* charge.

200. Further investigation by Goff/Rooney is warranted in both TS and KL allegations, but was maliciously never performed. It would have been exculpatory for Losano.

201. According to the DSJIC, Losano's records, once again, missing for this day. See Exhibit 40, pg. 000008.

202. On 5/12/2018, Waltham police are notified of alleged incident at the VFW with TS.

203. According to the BPD discoveries, there is no record of Waltham police officer Michael Maher informing BPD of no such structure, at the VFW, as described by TS.

204. On or about 5/12/2018, the Swampscott police department (hereinafter SPD) was notified that Losano and the owner of the pickup truck, Cousin, are suspects in sexual assaults in the Mass. Ave. area.

205. BPD was placed on notice, by the SPD, that the alleged allegations against Losano were not his character. Exhibit 69 for reinforcement of Losano's character.

206. BPD was placed on notice, by the SPD, that Losano had successfully sued one of their former police chief. 02-11111 MEL. See Daily Item news clip, Exhibit 70.

207. While Goff was filling out Losano's criminal complaint in regards to TS, he filled in fictitious date of 5/14/2018 in the "DATE OF OFFENSE" box and the 'COUNT 1 and COUNT 2 narrative. Exhibit 71.

208. Losano was at work on stated time and date.

209. This misrepresenting of the time line by Goff was designed to mislead the court in making an inaccurate judgment in issuing a warrant.

210. While Goff was filling out Losano's criminal complaint in regards to KL, he filled in fictitious date of 5/14/2018 in the "DATE OF OFFENSE" box and the 'COUNT 1 and COUNT 2 narrative. Exhibit 72.

211. Losano was at work on stated time and date.

212. Once again, this misrepresenting of the time line by Goff was designed to mislead the court in making an inaccurate judgment in issuing a warrant.

213. On 5/15/2018 Losano received a cell call from the SPD while at work.

214. SPD requested some assistance in an upcoming case and wanted to discuss it ASAP.

215. SPD arranged a "set up" meeting with Losano at the Peabody Marriott hotel's parking lot at 1pm.

216. Once at the Marriott, Losano was arrested by the Boston fugitive task force for two warrants out of Boston.

217. BPD illegally took possession of Losano's cell phone during the arrest. See property return letter, Exhibit 73.

218. Losano was transported to the Peabody police department for a courtesy booking.

219. Due to Losano's cell phone being taken illegally, he was prevented in making any phone call(s) to any family/friends.

220. While awaiting transport to the BPD, Goff and Rooney arrived at the Peabody police station to interrogate Losano.

221. Losano was informed of his Miranda rights by Goff and Rooney.

222. Losano request to see a police report was denied.

223. Goff and Rooney are put on notice by Losano that he had been successful in civil litigation against police misconduct. BPD transcript, Exhibit 74 (Lines 15-21).

224. For some unknown reason, Goff asked Losano if he had killed the former Swampscott police chief. Exhibit 75 (Lines 2-7).

225. During the interview, Losano was informed he was implicated in 2 separate sexual assaults, not rapes, in Boston.

226. Goff is well aware of Losano not having a police record (CORI), due to him running it prior to the interview...

227. ...However, Goff/Rooney never ran or omitted Losano's FIO, which would have revealed his participation with George Street fire investigation in 2016/2017.

228. Losano immediately informs Goff and Rooney about his participation in the George Street fire investigation. BPD transcript, Exhibit 76 (Lines 9-25).

229. Losano further states that this could be a set up to have him impeached as a possible witness in the upcoming arson/murder trial.

230. After a second denied request to see a police report, Losano terminates the interrogation after 14 minutes.

231. While the interview was terminated, the audio was still live and Rooney admits she places hand cuffs too tight on previous suspect(s). BPD transcript, Exhibit 77 (Line 20).

232. Further GOOGLE investigation on Goff revealed 2 complaints. See Woke Window Project/Boston Globe data article, Exhibit 78 (This is a 3 page Exhibit that was condensed).

233. One complaint was filed in 2009 and according to the "Woke Window Project," this investigation is still pending.

234. Further GOOGLE investigation on Rooney reveals 13 complaints. See Boston Globe data, Exhibit 78.

235. 3 complaints were sustained by BPD internal affairs in regards to Rooney's investigation.

236. One of the Rooney's complaints was time theft.

237. Losano was transported to District B-2 police station and booked.

238. There, Losano wasn't provided any blanket while cold air was pumped into the cell, thus causing unnecessary suffering.

239. On the same date (5/15/2018), a search of Losano's apartment, basement storage area, and the land lord's pickup truck were performed, per search warrants docket # 1802CR001321 and 1802CR001322.

240. According to the search warrant, the following items were to be seized: 1) Biological evidence, 2) Blue and red colored, small-scale Red Sox novelty bat, 3)/4)/5)/6) and 7) Five firearms, 8) A mattress and 9) Personal papers/bills that will establish occupancy, ownership and control of apartment and truck.

241. BPD illegally took possession of Losano's CCTV security DVR. BPD evidence sheet, Exhibit 79.

242. On 5/16/2018 Losano, under heavy media attention; courtesy of the ADA office, was arraigned at the Roxbury District Court and bail was set for $50,000 cash.

243. Commonwealth never requested a dangerous hearing for Losano.

244. Losano arrived at the Nashua Street jail later on that day.

245. During intake, a well informed correction's officer informed Losano that the 2 suspects (Ford and Dozier) that he assisted in getting indicted were in the unit, where he was going to be housed.

246. At this time, Losano was placed into protective custody where he spent 23 hours a day, alone, in a cell.

247. During this time, Losano was exposed to a crime scene where an inmate took his own life, thus causing concern about safety/security at the jail. Boston Globe article, Exhibit 80.

248. On 5/18/2018, Goff illegally takes custody of Losano's security DVR from the evidence room. BPD evidence sheet, Exhibit 81.

249. This security DVR covers 360 degrees of his Losano's residence and the video feed goes back 30 days.

250. Goff views the video of the early morning of 5/3/2018; the alleged time and date of attempted kidnapping of TS, according to KL's 5/10/2018 police interview and her Grand Jury testimony on 6/8/2018.

251. The video reveals that Losano never left his residence. This would have been exculpatory for Losano.

252. It's now CLEAR, Goff knows that KL was not truthful in relaying the attempted kidnapping story of TS.

253. Goff never does a follow up with KL or TS on this important chain of events. It would have been exculpatory for Losano.

254. Goff never subpoenas any city cameras to verify KL story on TS's attempted kidnapping and/or any events in March of 2018. It would have been exculpatory for Losano.

255. Goff, and most likely Rooney, knows that they are now in a legal predicament, due to their arrest of Losano.

256. On 5/23/2018, Losano's family makes the $50,000 cash bail.

257. Losano is released with GPS device and other restrictions.

258. Losano, at the time of the writing of this complaint, still has a bruise from the GPS on his left ankle/instep. Exhibit 82.

259. After posting bail, Losano arrives at his ransacked apartment.

260. The following property was destroyed by the BPD: 3 safes, 1 lap top computer with a blue screen, the storage room door, collectable newspapers, chair support damaged.

261. On 5/31/2018, Most likely BPD (2600:1:f55b:825f:15ee:6dab:7377:62ac) log into Losano's G-mail account/GPS locator.

262. No inexculpatory evidence was revealed in search of Gmail account/GPS locator.

263. On 6/3/2018, while Losano was at his court appointed attorney's office, Arnold Abelow, it was made evident that KL viewed Losano's FACEBOOK videos of prior yard sales.

264. Viewing of 2 Facebook yard sale videos revealed how the women were able to describe physical evidence to Losano.

265. The videos revealed the following items for sale: Air mattress, truck construction box, power tools and Losano affiliation with the United States Marine Corps.

266. According to the discoveries, Goff also viewed the same Facebook videos. Exhibit 83.

267. On 6/6/2018, Goff intentionally misled the Grand Jury, in an attempt in making him/BPD immune from any civil liability in a potential false arrest.

268. Goff testified to the Grand Jury as follows:  Goff states that the suspected color of the firearm as silver to coincide with MD's earlier description; however, Goff knows the firearm is clearly black. BPD evidence photo, Exhibit 36.

269. Goff testifies that he has been in constant contact with MD via text/cell calls, which Goff knows is false. Goff failed to provide text/cell phone calls/face to face notes to Losano's defense attorney, even after 3 discovery request to do so.

270. Goff was asked by the ADA if there were any other suspects in this case and he stated "no." however, Goff named Cousin as a second suspect in the search warrant affidavit. Cousin was initially ID for 2 of the 5 assaults.

271. Once Cousin was eliminated as a suspect, Goff misled the Grand Jury so that Losano was indicted for Cousin's 2 alleged victims.

272. KS clearly describes more of Cousin than Losano.

273. On 10/25/2018, KS fails to ID Losano out of the photo array.

274. Goff misleads the Grand Jury by stating TS assault occurred in November 2017, but Goff knows that TS changed the date to March 2018 in the 5/7/2018 and 5/8/2018 police interviews.

275. Goff continued to build a false inference, states to the Grand Jury that Losano was "never a police officer." Portraying Losano as a "wanna be" police officer. However, during the search of Losano's apartment on May 15 through May 17, 2018, in plain view, was Losano's letter of employment as a sworn special police officer

for the Town of Danvers, MA. Also attached to this letter's picture frame is an official Massachusetts "special police badge." See SPO letter, Exhibits 20.

276. Also in plain view were four separate military police badges attached to Honorable Discharges from all 4 major components of the U.S. Armed Services.

277. Goff leads the Grand Jury to believe that in 2017, numerous reports were coming in about multiple assaults from that area; however, only MD report was documented.

278. If multiple sexual assault reports were being reported in the summer of 2017, BPD violated it own policy under Rules and Procedure Rule 204, Sec: 12. COMMUNITY NOTIFICATION PROCEDURES. Exhibit 84.

279. Goff never informs the Grand Jury that all 5 women are friends.

280. Goff never informs the Grand Jury that KL's boyfriend is directly connected to the George Street fire.

281. Goff fails to notify the Grand Jury that KL is high at the times of all interviews with BPD, including her Grand Jury testimony.

282. Goff/ADA place into Grand Jury evidence the tainted photo array. Grand Jury transcript, Exhibit 85 (2 page Exhibit).

283. On 6/11/2018, MD was finally interviewed at the Boston police station on Washington Street by Goff and Det. John Sullivan.

284. MD had to admit that she actually knows Losano from Uber.

285. MD had to admit Losano has given her money for food.

286. MD could have ID Losano back on 10/20/2017, but failed to do so.

287. During this interview, MD changes the assault date for the 3rd times. From July-June 2017 (Booking date 10/20/2017), to September 2017 (10/29/2017, *911 call*), to May- June 2017.

288. Goff attempts to connect Losano to MD's assault date by using his vehicle GPS locator during the time frame of May-June 2017.

289. Losano's vehicle was in Boston in May-June 2017; however, it was the 2002, black in color, Jeep Cherokee that is clearly not a white pickup truck.

290. Uber Records revealed that Losano was working as an Uber driver, in the 2002, black in color, Jeep Cherokee, during the time of May-June 2007.

291. MD now changes the color of the firearm from silver to black.

292. MD could not describe any obvious key items or electronics that were present in the interior of the suspected pickup truck.

293. Goff asked MD multiple times if she was shown any photos of Losano. This questioning clearly shows that Goff is on notice about prior unauthorized showing of Losano's photo.

294. MD claims that after she was assaulted, the suspect dropped her off in front of her friends

295. At no time did Goff or Rooney attempt to speak with any of MD's friends as potential witnesses.

296. On 7/11/2018, due to Goff's misrepresenting/misleading/omitting facts of exculpatory evidence of the case, a Boston Grand Jury passes down a 20 count indictment (1884CR00584) against Losano.

297. On 7/12/2018, Losano was arrested again on a 20 count indictment stemming from the same investigation, where the BPD claims that 3 more victims came forward.

298. MD is one of the 3.

299. Losano was initially jailed at the Nashua Street jail and then was transferred to South Bay jail.

300. Once at South Bay jail, Losano was placed in jail population.

301. Significant harm/death would have followed if the inmates/cell mate obtained knowledge of Losano's law enforcement background and/or participation in the George Street fire investigation.

302. As the days passed, Losano's cell mate became more aggressive in his behavior, where Losano had to be placed into protective custody again.

303. Prior to protective custody, Losano spent time in the hole.

304. There, Losano was not cloth property and once again, cold air was pumped into the cell, thus causing unnecessary suffering.

305. During Losano's second incarceration, new counsel was obtained, attorney James Sultan.

306. On 7/30/2018, during the $175,000 bail reduction hearing, the Court was made aware that Losano provided critical information with a BPD arson/murder investigation back in 2016/2017.

307. Losano's counsel also informed the Court that all 5 women are friends, which the ADA could not refute.

308. Bail was reduced back to $50,000 and with GPS and the same basic restrictions in place, Losano was bailed.

309. The Commonwealth's new claims are that there are now 5 victims, thus making Losano appear to be a serial rapist (Exhibit 86), however...

310. ...A requested for a dangerous hearing for Losano, once again, was never requested by the Commonwealth.

311. On 8/8/2018, Viele is in custody and is interviewed by Goff and ADA Jillian Hira at the Boston's Suffolk Superior Court.

312. Goff expected this interview to help his case, however, when Goff asked Viele if Losano ever sexually assaulted her she stated "No, I wasn't" BPD transcript 8/8/2018, Exhibit 87 (Lines 2-3).

313. Viele further stated…. *"were always, you know, a guy, a good citizen that cared. Technically."* BPD transcript 8/8/2018, Exhibit 88 (Lines17-18).

314. On 9/28/2018, Losano's cell phone and security DVR were returned. Exhibit 73.

315. DVR was formatted by the BPD, thus destroying exculpatory evidence for Losano.

316. On 1/3/2019, Losano's attorney requested from the Suffolk County Jail, all jail house calls/visitor logs from the 2 men indicted in George Street fire arson/murder.

317. This potential exculpatory information would have connected the 5 women to the arson/murder investigation.

318. On 1/28/2019, The Commonwealth was temporarily successful in blocking this potential exculpatory evidence.

319. On or about 1/29/2019, Losano is informed by his attorney's private detective that KL is indeed girlfriend to Owens, who is the main henchman to the 2 men who were indicted. See file letter, Exhibit 89 (Exhibit condensed).

320. On 7/23/2019, a suppression hearing was held before the Honorable S.E. Sullivan in regards to the tainted photo array.

321. During this hearing, Goff had to admit he knew of Wynne's showing of Losano's RMV photo to KT.

322. During this hearing, Goff also stated he knew of Wynne showing Losano's RMV photo to KT before the Grand Jury hearings.

323. During this hearing, Goff admitted he knew that the photo array was tainted, however, showed it to the Grand Jury anyways.

324. On August 20, 2019, the Honorable Judge Sullivan agreed that the photo lineup was Bias/Highly Suggestive and tossed out the photo lineup.

325. A now deleted BPD NEWS article from Goff's interview shows his frustration with "criminals and troublemakers." Exhibit 90.

326. Goff's Grand Jury testimony reveals his frustration has not diminished, especially with this case. See Exhibit 91 (Lines 20-25).

327. On December 12, 2019, all the criminal charges were Noelle Prose in favor of Losano. See Exhibit 92.

328. As a result of Goff's violation of Plaintiff's Constitutional and State rights, he was rewarded by receiving "2019 Boston Detective of the Year."

329. Losano filed complaints with the F.B.I Civil Rights Division, the Massachusetts Attorney General's office, and Boston Internal Affairs in the Month of April 2022.

330. As a result of Defendants actions/conduct, Losano attended court on multiple occasions.

331. Losano has incurred substantial attorney fees, substantial economic loss, emotional distress, physical injury and suffered repeated humiliation that still occur at the time of the writing of this complaint.

## COUNT I

## VIOLATION OF 42 U.S.C. ss 1983,
## 4th AMENDMENT RIGHT OF SEARCH and SEIZURE,
## BY THE DEFENDANTS GOFF, ROONEY, and KELLY

332. The Plaintiff restates the allegations in paragraph 1 through 331 and incorporates said paragraphs herein as paragraph 332.

333. By the actions alleged in paragraph1 through 332, the above Defendants violated the Plaintiff's 4th Amendment rights of search and seizure as guaranteed by the United States Constitution by omitting, misleading, and misrepresenting facts to the Roxbury District Court and Grand Jury; also illegally confiscating Plaintiff's cell phone during the arrest and home security DVR during the search warrant process.

334. Specifically, Kelly inputting clearly misleading facial/age statistics to the Massachusetts State Police Fusion Center, where an obvious Bias/Highly Suggestive photo array was created.

335. Specifically, Goff approved this clearly tainted photo array.

336. Specifically, While interviewing both alleged victims, Goff and Rooney had concrete knowledge that at least one, if not both, of the allege victims were clearing lying in their interview(s).

337. Specifically, Instead of investigating further, Goff and Rooney withheld this critical aspect of the investigation from the Roxbury District Court and the Grand Jury.

338. Specifically, Goff and Rooney misled, fabricated, omitted, and misrepresented facts to the Roxbury District Court with less than Probable Cause evidence for 2 District Court arrest warrants to be issued against Plaintiff.

339. Plaintiff was arrested at work and cell phone illegally confiscated during the arrest.

340. Plaintiff was eventually transported to the Nashua Street jail, Boston, MA.

341. During this time, a search of Plaintiff's apartment was being conducted, where Goff illegally confiscated Plaintiff's security DVR.

342. There, Plaintiff spent 2 weeks in Protective Custody to avoided serious bodily harm/death.

343. Specifically, Goff continues his misleading, fabrication, misrepresenting, and omitted facts to the Grand Jury where, due to his (Et al) illegal conduct, a 20 count indictment was handed down against Plaintiff.

344. Plaintiff, once again, was arrested and spent almost 3 weeks at the South Bay jail, Boston, MA.

345. There, Plaintiff avoided potential serious bodily harm/death by being placed into Protective Custody.

## COUNT II

### VIOLATION OF 42 U.S.C. ss 1983, 4th AMENDMENT RIGHT of PROTECTING PEOPLE FROM UNREASONABLE SEARCH and SEIZURE BY THE GOVERNMENT BY THE DEFENDANTS EVANS, JULIANO, and the CITY of BOSTON

346. The Plaintiff restates the allegations in paragraph 1 through 345 and incorporates said paragraph herein as paragraph 346.

347. The above Defendants have a custom and policy of deliberate indifference to the right of citizens by:

348. Tolerating a custom and practice in which law enforcement officials employed by the city and under supervision of elected and appointed police leadership routinely ignore police subordinates' malicious and wanton misconduct in performance of criminal investigations, thus leading to false imprisonment of law abiding citizens in violation of the 4th Amendment rights of unreasonable searches and seizures.

## COUNT III

### VIOLATION OF 42 U.S.C. ss 1983 5th and 14th AMENDMENT RIGHTS of DUE PROCESS of the UNITED STATES CONSTITUTION, ARTICLE XII of the MASSACHUSETTS DECLARATION of RIGHTS, and MASSACHUSETTS CIVIL RIGHTS STATUTE Ch. 12 ss 11-I

## BY THE DEFENDANTS GOFF, ROONEY, KELLY, WYNNE and MACLEAN

349. The plaintiff restates the allegations in paragraph 1through 348 and incorporates said paragraphs herein as paragraph 349.

350. By the actions alleged in paragraph1 through 349, the above Defendants deprived the Plaintiff's 5th and 14th Amendments rights of Due Process of the United States Constitution, Article XII of the Massachusetts Declaration of Rights, and Massachusetts Civil Rights statute Ch. 12 ss 11-I

351. Specifically, On 5/3/2018 Wynne shows Losano's RMV photo, in an ongoing criminal investigation, to KT prior to her photo lineup.

352. Specifically, Not only violating BPD own policy, but a clear violation of Losano's 5th and 14th Amendments rights of Due Process of the United States Constitution, Article XII of the Massachusetts Declaration of Rights, and Massachusetts Civil Rights statute Ch. 12 ss 11-I

353. Specifically, Wynne and MacLean continue their malicious conduct from omitting the showing of Losano's RMV photo to allege victim(s) in their report(s).

354. Specifically, Wynne had to admit his misconduct in a 7/23/2019 Superior Court suppression hearing.

355. Specifically, Senior Boston patrolman MacLean, who observed Wynne's misconduct omitted this incident from his report and never inform his chain of command of Wynne's misconduct.

356. Specifically, MacLean's omitting this incident from his report and not reporting this incident to his chain of command is a clear violation of Losano's 5th Amendment right of Due Process and Article XII of the Massachusetts Declaration of Rights to include Massachusetts Civil rights statute MGL Ch. 12. ss 11-I.

357. Specifically, Kelly, if records are correct is well educated in law, inputs grossly misleading information into the Massachusetts State Police Fusion Center. There, a Bias/Highly Suggestive photo array is created.

358. Specifically, Kelly's misconduct is a clear violation of Losano's 5th Amendment right of Due Process and Article XII of the Massachusetts Declaration of Rights to include Massachusetts Civil rights statute MGL Ch. 12. ss 11-I.

359. Specifically, Goff, who claims to be a season detective, approves an obvious tainted photo array.

360. Specifically, Goff and Rooney then presents this tainted photo array to the allege victim(s).

361. Specifically, Goff, who is informed prior to the Grand Jury that Wynne had shown KT a photo of Plaintiff before the photo line up, still presented the tainted evidence to the Grand Jury.

362. Specifically, Goff and Rooney wanton and malicious recklessness in an inept investigation is a clear violation of Losano's 5th Amendment right of Due Process and Article XII of the Massachusetts Declaration of Rights to include Massachusetts Civil rights statute MGL Ch. 12. ss 11-I.

## MASSACHUSETTS STATE TORT: ABUSE OF PROCESS
## BY DEFENDANTS GOFF and ROONEY

371. The plaintiff restates the allegations in paragraph 1 through 370 and incorporates said paragraphs herein as paragraph 371.

372. By the actions described in paragraph 1 through 371, the Defendants used lawful criminal process to commit an unlawful purpose;

373. Defendants used lawful process to accomplish an ulterior purpose for which it was not designed or intended and thereby interfered with the rights of Plaintiff.

**WHEREFORE,** the Plaintiff respectfully request that this Honorable Court award:

1) Compensatory damages against all Defendants.
2) Punitive damages against all Defendants
3) The cost of this action, including any reasonable attorney's fees if applicable; and ,
4) Such other and further relief, as this Court may deem just, necessary, and appropriate.

## DEMAND FOR JURY TRIAL

A jury trial is herby demanded.

Respectfully submitted,
Plaintiff Joseph A. Losano,
Pro Se

Joseph A. Losano          12/12/22
128 Burrill Street, Apt. B.
Swampscott, MA. 01907
C) 781-731-2272
Jlusa321@gmail.com

## CERTIFICATE OF SERVICE

I, Joseph A. Losano, herby certify that on December 12, 2022 at _____, I served 6 true copies, in hand to _____ at the front desk of the headquarters of the Boston Police Department, located on 1 Schroeder Plaza, Boston, MA. 02120


I, Joseph A. Losano, herby certify that on December 12, 2022 at _____, I served  1 true copies, in hand to _____ at the front desk of the headquarters of the Boston College Police Department, located on 140 Commonwealth Ave. (Maloney Hall), Chestnut Hill, MA. 02467


I, Joseph A. Losano, herby certify that on December 12, 2022 at _____, I served  1 true copies, in hand to _____ at the front desk of Boston City Hall C/O the Mayor's office, 1 City Hall Sq. Boston, MA. 02201